We hear next from the parties in Pyskaty v. Wide World of Cars. May it please the Court, my name is Dan Schlanger and I represent appellant Maya Pyskaty. As the Court is aware, this case involves the alleged fraudulent sale of a high-end certified pre-owned vehicle by a dealership which represented the vehicle to be accident-free and in perfect condition, but in fact knew that it was severely damaged. The vehicle is completely undriveable and is rebuilt, severely damaged, rebuilt. Is there any question here about the fact that you are asserting a cognizable claim? It's whether you've got a damage amount sufficient to be in Federal court, so help us out there. Sure. So the question is, the suit is brought under the Magnuson-Moss Consumer Warranty Act, which in addition to providing some substantive protections, provides a private Federal cause of action if its $50,000 jurisdictional amount is met. Specifically, the statute says that you cannot proceed in Federal court unless, quote, the amount in controversy or, I'm sorry, you cannot proceed in Federal court if the amount in controversy is less. Why don't you go on and tell us why the amount in controversy is more than $50,000? Sure. The relevant point, Your Honor, is that it has to be on the basis of, quote, all claims to be determined in this suit. Supposing it was just the revocation claim. And I know all claims, pendant claims, that's complicated. But I would think that your first argument would be that it was a $51,000 automobile and the price consisted of a trade-in, $2,000, plus the rest of the borrowed money, which adds up to more than $50,000, period. That's exactly right. In other words, this Court need not get into the circuit split on the first question of whether or not all claims include state pendants. State claims, because in this case, the face value of the contract is over $50,000. Tell us how you get above $50,000. Sure. Just on the one Federal claim. On revocation, it's a contract for the total sale price of the vehicles, $52,000, on the face of the retail installment contract. And I would point out, you know, Your Honor pointed out that there's a trade-in for another almost $20,000 that gets you up to $70,000. You don't need that trade-in to get over $50,000. There's also, as we've pointed out, I think we would be entitled to the interest on the contract. But you don't need that either, because in this case, if you just take the vehicle and the sales tax and the other sort of ---- The purchase price, fully loaded, as they used to say, was 50-some-odd, $51,000 paid for out of ---- in three ways. Is that not right? That's right. It was ---- Tell us what three things, if there are three, if there are four, adds up to more than the $50,000 that was paid for. There's a down payment of $2,000. There's a retail installment loan for the remainder of the money. There was also a trade-in, which added an additional ---- How much was the retail installment loan? I just find it a little odd that the trade-in wasn't part of the purchase price. So the retail installment loan, I believe, is at A-173 in the record. And the cash price of vehicle and accessories is, as Your Honor pointed out, $51,195. Where did the payment price of 51,000 ---- was the entire $51,000 paid? Well, so there's additional stuff. There's sales tax, for example, on top of it. Fine. But was it all paid? Yes. Some of it was financed. I didn't ask that. I want to know whether it's ---- I don't care whether he found it in the street. The question is whether he paid for it. I agree. I ---- yes. Yes. The price was paid. So the district ---- the reason I mention this is the district court said, well, you know, paid shouldn't include the financed portion. Did the defendant get the money, whether it financed or not? Absolutely. So the defendant got the purchase price of at least $50,000. Correct. And I think the inquiry ends there, regardless of whether or not you call it revocation or rescission or cancellation or whatever. Well, they're quite different. I mean, you know, we're dealing in equity, and the magistrate ---- I'm sorry, the district judge thought that equity requires the return of whatever benefit you've received. So at a minimum, you'd have to return the car. So they would be entitled to an offset of, yes, they'd have to return the car. Let's not talk about what benefit your client received by driving it. Your position is it's a lemon. But in order to do this, you'd have to return the car. Correct. All right. Now, the district judge was of the view that the car would be, even as a lemon, would be worth a couple of thousand dollars, and that way take you under the $50,000. Tell us why you think that's wrong. Sure. I should just, for factual accuracy, this was referred to the magistrate for all purposes. I know. That's why. Okay. So the short answer is when we do rescission claims, we have a set methodology that we have from diversity. It's longstanding. And you do not credit any of the offset or counterclaims or money going back. It's just the face value of the contract you seek to unwind. That's on rescission. I'm not sure that's so on revocation. On revocation, you would get, under the UCC, you would get so much of the price as has been paid, plus consequential and incidental damages. The district court did not find, oh, it's because of the value of the car going back. The district court found, with regard to revocation. How much has been paid? How much has been paid? Our position is exactly as Your Honor has articulated, that over $50,000. You mean that if you succeed in this lawsuit, you'll still have to pay the loan? No. My position is that absent revocation, my client has been paying the loan every month. Right. But it's the loan you're trying to revoke. Or what is it you're trying to get revocation of? We want to cancel the contract, which is a retail installment contract, so it's a loan to pay for the car over time, secured by the car. Doesn't the bank, BMW Bank, have to get all of its money back? Whatever it gave you, it gets it back. It has nothing in that right. I mean, it didn't give you the money. It loaned you the money. So BMW Bank ---- Think of it this way. You bought the car from the dealer, and you've told us the dealer got paid. Yes. But you got a loan from the bank. That's how the dealer got paid, from BMW Bank. And you still have an obligation to them for this loan. Sure. That's being paid. Sure. What is it you're trying to revoke? The entire ---- we're seeking to unwind the entire thing. The loan. Which includes the loan, sure. Okay. So that's right. I see my time is up. So, I mean, there's other topics we could talk about. So in revocation, what are you hoping to come out with? You're hoping to come out with the loan canceled and what? The loan canceled plus the consequential and incidental damages, which would be, for example, there were attempts to repair the car. That was several thousand dollars. There's ---- But we don't have to include that for the ---- It's ---- I think that's right. In other words, several courts have done it the way Your Honor is suggesting, where you say the price to be paid includes the amount that was financed. There are some other courts, we've pointed them out in our brief, that have said actually, at least where it's third-party financing, the amount that was financed ---- if the dealer is aware that it's being financed, the amount that's being financed would be in incidental or consequential damages. In this case, because of the way the transaction is structured, I don't know that this Court needs to figure out how to classify that. All right. Let's hear from your adversary, okay? Thank you. Thank you, Your Honor. Thank you, Your Honor. Good morning. My name is Keith Ambrose. I represent Wide World of Cars. One thing I'd like to point out for your consideration is that on the issue of the on the BMW as she was trading in, she was upside down on that loan. Meaning? Just like on a house mortgage, the car was worth less. She rolled the amount remaining on that loan, $19,000 in change, into her new loan to finance this car that she bought. But she gave up her old car. She sold it, basically. That's correct. She sold it and it was worthless. She gave up, in essence, she gave up $20,000 to get the new car by turning in her old car and rolling over the loan. Right. But I don't think the rollover would be considered as part of the damages here in any way. Would the purchase of the car, I mean, would the purchase price have been $70,000 but for her turning over her old car and assuming and still paying that loan, but now as part of the BMW package? If you look at the purchase order, it doesn't reflect the reduction for the trading. Let me ask you this. I mean, she didn't just roll over this loan for nothing. I mean, what did she get from the car dealer in return for rolling her loan into this new obligation? She didn't get anything from BMW for that. It was just that that was a deal between herself and the bank, which is a separate entity. It had nothing to do with what the dealer gets. The dealer only gets the purchase price of the car. Now, again, what we seem to be— Was the purchase, the total purchase price of the car, the total, including whatever it was used to pay for, was the total purchase price, including tax and add-on, forget tax for a second, including whatever additional equipment, was it more than $50,000? The actual price for the vehicle itself was $48,500. Plus? Or add-ons to it for fees and licenses and registrations and other items. But the point is, as I think you well know, that under the standard of the revocation even, you have to give a consideration to the beneficial use of the vehicle. And Judge McCarthy felt when you factored all that in, it would clearly bring the— That's the beneficial—pardon the expression. That's the beneficial use of the lemon we're talking about. Yes, but there's no proof, even in the pleadings, that it's a lemon. Isn't this part of the controversy? I mean, and so whether your argument prevails in the end or not, it's part of the controversy. So the amount in controversy includes all of these issues related to what you factor in, what you don't factor in. I mean, they're saying that this, you know, they're on the hook for $70,000 and they want to undo this. And you may be right in the end, but that's at this point in trying to decide whether the court can resolve the controversy. Don't we look at the disputed amount? I don't think so under the prevailing case law. Again, we're dealing with limited warranties that were issued here, valid limited warranties. I understand that. But even in a diversity case, you know, you don't decide at the outset, you know, whether in fact the claim is in excess of the jurisdictional amount. I mean, that's what's in controversy. The real claim here is she's saying the car, instead of being worth $50,000 roughly, was worth only $20,000, irrespective of the fact that the dealer was willing to take it back for $35,000. But the amount financed is $70,000. So some of that would be interest that she has to pay on the loan. But how much of that went to the dealer? The dealer doesn't get any interest. No, no. Of the $70,000. $50,000. That's what I'm asking. Correct. She is only paid, as Judge McCarthy stated, less than $20,000. Right. But the dealer got $51,000. Correct. Tell us your view of the difference between revocation and rescission. Because the Sixth and Seventh Circuits have suggested that the full value of the contract is not the amount in controversy for revocation, but it is for rescission. Tell us how you view it differently. Well, you have to look at some of the other cases, like Gorno and I forget the site, which is cited by Judge McCarthy in his decision, which says With respect to revocation or rescission? Let's see. She deals with rescission. The decision is a footnote. Right. It says under Gorno, Golden v. Gorno and Luna v. Ford, it says that it does not include finance charges. And in fact, Golden rejects the reasoning of several cases, plaintiff attempts to rely on, which is Jadar v. Wall Keeler and Roberts v. Chandelier Holmes. It does not involve the what charges? Finance charges. Right. But even without finance charges, the car is 50, the contract is $51,000. But her claim is that the car was worth less than that. And the way you compute the damages. No, no, but the contract that she wants to rescind is for $51,000, right? Yes, but the way the damages are computed under that rescission. No damages in rescission. It's rescinding the contract. Look, he's not entitled to rescission. Under the UCC, under 711. If I pay $50,000, $55,000, let's say, $55,000 for a car, right? And I get the car and I don't like it and I say it's awful, it's only worth $40,000. You're saying the amount in controversy is there for $40,000? No, it's the difference between the price paid. Not if you give the car back. The actual value. Not if you're undoing the deal and giving the car back. You don't have the car either. This is a limited warranty. There's no basis to undo the deal. That may be, but the question is whether that amount, the question you ask whether there's a basis or not doesn't involve, it's a fair question, but doesn't it involve more than $50,000, the question? Not the answer, but the question. I disagree. Well, so don't we have to take this a step at a time? I mean, first of all, they're in federal court. You want to throw them out of federal court. The question is you haven't moved to dismiss their rescission claim. So right now we're not reviewing whether they've got a valid rescission claim. We're only reviewing whether the rescission claim has an amount in controversy worth more than $50,000. I mean, a ruling in your adversary's favor doesn't preclude you from then moving to dismiss the rescission claim and on that basis saying that the matter shouldn't be in federal court. But right now the only question is whether that rescission claim states an amount in controversy more than $50,000. But again, you have to look at the four pleadings, and I did allege that it failed to state a cause of action. Did you allege that in the district court, that they seek dismissal because they failed to state a cause of action? Because I wasn't aware that that's before us. It is mentioned in the underlying papers. I don't think that's the magistrate judge's ruling. Right. That's not the way the judge decided it. All right. Thank you. Thank you. Mr. Schlanger. Your Honor. Some of the treatises on rescission do talk about the need to consider what benefits have already been received. And as I said, even in rescission, if you were to succeed, you'd have to give the car back. Right? Yes. So why is that not appropriately considered as part of the assessing what the real amount in controversy is? Help me out. Well, to the extent we're talking about the value of the use of the vehicle, I think the ---- No, no. Let's not even get into that. Let's just get into the vehicle. Giving back the vehicle, it's hard to imagine it's not worth $2,000. So I think the answer is that under Federal jurisprudence about how we do rescission, we don't count it, and that there's no ---- Just the contract amount. It's just the contract amount, and we've cited the cases. I wanted to just ---- the only question, I think, is whether or not you adopt a radically new rule specific, much narrower and harsher to the party seeking to be in Federal court specific to Magnuson-Moss Warranty Act claims. And I don't think that would be justified. I just very briefly want to ---- So we would basically be suggesting that people who finance expensive cars get to have their warranty claims in Federal court, and people who purchase more modest-priced cars don't? Your Honor, I think the answer is where you're seeking to unwind big contracts, the amount in controversy is greater. You're not making up it's better to be rich than poor. It's the Act that says it has to be. That's right. If Congress wants to get involved in unwinding poor people's much smaller contracts, I'm, you know, my view on that doesn't really matter. But I just very briefly wanted to point out my adversary cited to the Golden case. With regard to revocation, Golden's been overturned or essentially cabined into nothingness by the Sixth Circuit in a case called Hornden. We discussed that at page 20 of the brief. It's also a measurable, a decent dissent in Golden itself, correct? And there's also a quite lengthy and I think persuasive dissent by Judge Wood in Golden. Thank you. Yes. Thank you, Your Honor.  Thank you both for your arguments.